UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RUSSELL ROUZIER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-cv-00072-JPH-MJD ) |
| WEXFORD OF INDIANA, LLC, *et al.*, | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Russell Rouzier, a prisoner of the Indiana Department of Correction (IDOC), has serious medical conditions. In this case, Mr. Rouzier alleges that medical staff at Putnamville Correctional Facility were deliberately indifferent to his chronic kidney disease.

The defendants have moved for summary judgment. For the reasons that follow, the summary judgment motion is **granted**, and this case is **dismissed**.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the

1

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Procedural Background

Mr. Rouzier filed his complaint *pro se*. Dkt. 1. The Court screened his complaint pursuant to 28 U.S.C. § 1915A in July 2021 and summarized the allegations as follows:

> Mr. Rouzier has been incarcerated since his arrest in 2015. He entered prison with both HIV and glaucoma.
>
> Since Mr. Rouzier entered prison, he has been deprived of necessary medical care for glaucoma. At one point, it took over nine months for Mr. Rouzier to be examined by an eye doctor. Then, it took several months for Mr. Rouzier to receive eye drops that the doctor prescribed. When he has been provided with the eye drops, they have not always been reordered, leading to more months-long periods without eye drops.
>
> At the beginning of Mr. Rouzier's incarceration, several months passed before he saw a doctor or received medication to control his HIV. Eventually, he received medication that he took for two-and-a-half years under the supervision of Drs. Finote and Spanenberg. In July 2018, Dr. Elliott, an HIV specialist, told Mr. Rouzier that his medications were damaging his kidneys. She referred Mr. Rouzier to a nephrologist, but Dr. Mitcheff denied the referral.
>
> Eventually, Mr. Rouzier saw a nephrologist in February 2019. The nephrologist called for a follow-up appointment and testing in six months. Mr. Rouzier has not been back to the nephrologist or received that testing, despite the nephrologist's instructions and requests from Dr. Elliott. When Mr. Rouzier asked why he was not being seen by a nephrologist, Dr. Perez and Ryan [Schnarr] told Mr. Rouzier that they did not see why he needed a follow up.

Dkt. 12 at 2–3.

The Court identified one set of plausible claims and ordered that the case would proceed with Eighth Amendment claims against Wexford of Indiana, LLC

and Wexford employees Dr. Mitcheff, Dr. Perez, and Health Services Administrator Ryan Schnarr. *Id.* at 3.

Mr. Rouzier retained William Morris as counsel in April 2022. Dkt. 66. Mr. Morris did not seek leave to amend the complaint or revisit the Court's screening order.

The defendants moved for summary judgment. Dkt. 83. In support of their motion, the defendants designate portions of Mr. Rouzier's medical records, the defendants' affidavits, and Mr. Rouzier's deposition. Dkt. 84.

Mr. Rouzier's response, prepared and filed by Mr. Morris, does not include a statement of material facts in dispute as required by Local Rule 56-1(b). Dkt. 87. Rather, the response lists seven factual statements it contends are *not* disputed, none of which concern Mr. Rouzier's treatment for kidney disease. *Id.*

Local Rule 56-1 requires a party opposing summary judgment to "include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. L.R. 56-1(b). The Court deems the movant's factual assertions true if the nonmovant fails to (a) specifically controvert the facts asserted in the movant's statement of undisputed material facts, or (b) show that the movant's assertions are not supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(1)(A)–(B). Mr. Rouzier's response does neither, so the Court accepts the defendants' assertions of undisputed material facts as true to the extent they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(1). *See Ammons v. Aramark Unif. Servs.*, 368 F.3d

809, 817 (7th Cir. 2004); *McCurry v. Kencol Logistics Servs.*, 942 F.3d 783, 787, n.2 (7th Cir. 2019). The Court has no duty to search the record or consider evidence not cited by the parties and their counsel. S.D. Ind. L. R. 56-1(h).

### III.
### Facts

The following facts are undisputed.

At all times relevant to the allegations in the Complaint, Mr. Rouzier was a prisoner at Putnamville; Wexford was contracted to provide medical care to PCF inmates; Ryan Schnarr was the Health Services Administrator at Putnamville; Dr. Michael Mitcheff was Wexford's regional medical director; Dr. Pablo Perez was the Medical Director at Putnamville; and Dr. Kathleen Prag was a nephrologist who did not work for Wexford or at Putnamville.  Dkt. 84 at 2-10 ¶¶ 1-33.

Mr. Rouzier's medical records show that Dr. Perez examined him and treated him numerous times during his incarceration at PCF, including on December 13, 2018. Dkt. 85-1 at 70–73. Dr. Perez observed that Mr. Rouzier's creatinine level measured 2.11 and that it had measured 2.05 six weeks earlier.[1]

---

[1] The Court takes notice of the following definition, which it cites here only to provide context:

> Creatinine is a waste product that comes from the normal wear and tear on muscles of the body. Creatinine levels in the blood can vary depending on age and body size. A creatinine level of greater than 1.2 for women and greater than 1.4 for men may be an early sign that the kidneys are not working properly. As kidney disease progresses, the level of creatinine in the blood rises.

National Kidney Foundation, *Tests to Measure Kidney Function, Damage and Detect Abnormalities*, https://www.kidney.org/atoz/content/kidneytests (last visited May 5, 2023).

*Id.* at 70. Dr. Perez also noted that Mr. Rouzier's infectious disease specialist—charged with treating his HIV—previously requested that he be referred to a nephrologist, although the record does not include that request or specify its date. *Id.*

Also on December 13, 2018, Dr. Perez requested that Dr. Mitcheff approve Mr. Rouzier for referral to a nephrologist. Dkt. 85-1 at 74–77. Dr. Mitcheff was Wexford's regional medical director and had authority to approve or deny requests by treating physicians like Dr. Perez that patients be referred to specialists. Dkt. 85-5 at ¶¶ 2, 9, 11, 12. Dr. Perez noted in his request that Mr. Rouzier's infectious disease specialist requested referral to a nephrologist a "few times" and warned that some of his medications could cause kidney damage. Dkt. 85-1 at 75. Dr. Mitcheff approved the referral on December 17, 2018. *Id.* at 76.

Mr. Rouzier had another appointment with Dr. Perez on January 17, 2019. Dkt. 85-1 at 66–69. Dr. Perez noted only that Mr. Rouzier's creatinine level was elevated and that his nephrology referral had been approved. *Id.* at 68.

Mr. Rouzier had an appointment with Dr. Kathleen Prag, a nephrologist, on February 19, 2019. Dkt. 85-1 at 61–65. Dr. Prag noted that she was unsure of the cause for Mr. Rouzier's elevated creatinine levels. *Id.* at 65. She expressed that she was "content with taking a watch and wait approach" but also stated that she would "see him in 6 month[s] or sooner if needed." *Id.*

It does not appear that any doctor at PCF evaluated Mr. Rouzier's kidney disease again until June 2019. On June 5, a nurse practitioner requested that

6

Mr. Rouzier be referred to Dr. Prag for a follow-up visit as Dr. Prag had requested. Dkt. 85-1 at 52–53. Dr. Mitcheff denied the request, finding that Mr. Rouzier's renal function was "stable" and that he could be adequately monitored from PCF. *Id.* at 54.

Mr. Rouzier had an appointment with the nurse practitioner on September 12, 2019. Dkt. 85-1 at 44–47. Her notes document that Mr. Rouzier complained of abdominal pain and heartburn but no symptoms indicating a change in kidney function. *Id.* at 44. When she saw Mr. Rouzier three months later, he complained of coughing, sinus drainage, and difficulty chewing and swallowing but no symptoms related to his kidney disease. *Id.* at 40–43. It is not clear that she collected or reviewed any lab tests in connection with either the June 5 or September 12 visit.

Mr. Rouzier was seen by Dr. Perez on March 31, 2020. Dkt. 85-1 at 36–39. According to Dr. Perez's notes, Mr. Rouzier complained of COVID-19 symptoms but no kidney-related symptoms. *Id.* at 36. Dr. Perez ordered chest x-rays but no blood or urine testing. *Id.* at 38.

Mr. Rouzier did not see a doctor again until December 10, 2020. Dkt. 85-1 at 32–35. At that appointment, he complained of lightheadedness, dizziness, and headaches, but no symptoms of kidney disease. *Id.* at 32. Dr. Perez noted that he would request referral to a neurologist, but he did not order blood or urine testing. *Id.* at 34.

According to the nurse practitioner, Mr. Rouzier reported on December 31, 2020, that his kidney disease symptoms were stable and that he had no complaints. Dkt. 85-1 at 28. She ordered unspecified lab tests. *Id.* at 30.

Dr. Perez evaluated Mr. Rouzier on February 24, 2021. Dkt. 85-1 at 16–19. Dr. Perez requested a nephrologist referral, noting that Mr. Rouzier's creatinine level had increased to 2.27. *Id.* at 13–15. Dr. Mitcheff approved the referral on March 1—a month after Mr. Rouzier filed his complaint in this case. *Id.* at 15.

Dr. Perez evaluated Mr. Rouzier again on April 16, 2021, at which point he had not returned to the nephrologist. *Id.* at 5–8. Dr. Perez noted only that Mr. Rouzier did not complain of shortness of breath or swelling in his feet or legs. *Id.* at 5.

Mr. Rouzier returned to Dr. Prag on July 22, 2021. Dkt. 85-1 at 3–4. She again found no clear reason for Mr. Rouzier's elevated creatinine levels. *Id.* at 4. Dr. Prag again wrote that she was "content with taking a watch and wait approach," that she was "fine with his current regimen from a renal standpoint," and that she would see him again in six months or sooner. *Id.*

## IV.
## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103

(1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Here, the designated evidence shows that Dr. Mitcheff did not follow Dr. Prag's direction for Mr. Rouzier to have a follow up appointment with her in six months. Consequently, 29 months went by before Mr. Rouzier was seen again by Dr. Prag, despite her instructions. The Court need not determine, however, whether Dr. Mitcheff's failure to follow Dr. Prag's instructions could amount to deliberate indifference. That's because, as the defendants argue, Mr. Rouzier has designated no evidence that would allow a jury to find that the 29-month delay between appointments with Dr. Prag harmed Mr. Rouzier. *See* dkt. 84 at 26 ("There is no evidence of any harm" resulting from Dr. Mitcheff's conduct.); dkt. 88 at 6 ("The Plaintiff received medical care for his CKD diagnosis throughout his incarceration at Putnamville. The evidence shows no harm.").

"No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury." *Jackson v. Pollion*, 733

9

F.3d 786, 790 (7th Cir. 2013); *see also Fields v. Wharrie*, 749 F.3d 1107, 1111 (7th Cir. 2014) ("[T]here is no tort without an actionable injury caused by the defendant's wrongful act."). "[T]he causal link between a defendant's deliberate indifference and a plaintiff's injury is typically a question reserved for the jury." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022). "Summary judgment on causation is nonetheless warranted where 'a plaintiff can proffer no evidence that a delay in medical treatment exacerbated an injury.'" *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010)).

Here, when Mr. Rouzier returned to Dr. Prag 29 months after his first visit, her assessment was unchanged. She still did not know what was causing his heightened creatinine levels, but she was satisfied with his treatment plan and content to leave it in place. The medical records documenting Mr. Rouzier's medical condition over the two-and-a-half years between specialist visits do not show any obvious change in Mr. Rouzier's renal function or any change in his health that would be obviously attributable to his kidney disease. If Mr. Rouzier suffered from such a change in his health, he has not designated evidence showing it.

Mr. Rouzier's has not designated evidence demonstrating that the complained-of conduct—the delay in between appointments with Dr. Prag, an outside specialist—caused any harm. That issue is dispositive so the Court does not address the defendants' other arguments in support of summary judgment. Defendants are entitled to summary judgment.

## V.
## Conclusion

The defendants' motion for summary judgment, dkt. [83], is **granted**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order and the screening order, dkt. [12].

**SO ORDERED.**

Date: 9/15/2023

                                                *James Patrick Hanlon*
                                                James Patrick Hanlon
                                                United States District Judge
                                                Southern District of Indiana

Distribution:

All electronically registered counsel.